## HENRY C. HENSEL *vs.* JOS. G. JOHNSON ET AL.

*Mechanics' Liens—Notice to Owner When Contract for Materials Was With Builder—Materials Furnished Under Continuous and Under Separate Contracts—Time of Giving Notice—When Personal Service of Notice Necessary- Interest on Lien Claims.*

Code, Art. 63, sec. 11, provides that the person who furnishes materials for the construction of a building under a contract made with the builder or any person other than the owner, shall not be entitled to a mechanic's lien for the same unless, within sixty days after furnishing the materials he shall give notice to the owner of his intention to claim such lien, and under section 23, the lien claim must be filed within six months after the furnishing of the materials. *Held,*

1st. That where there was an agreement between a material man and the builder of a row of houses that the former should furnish such hardware as might be needed in the construction of the houses, and such articles were furnished at short intervals during the progress of the work, it will be presumed that they were furnished in accordance with the agreement, and the time for giving notice and filing the lien is to be computed from the date of the last item supplied.

2nd. That where there is a general agreement to furnish materials for houses being erected, the mere fact that the prices were fixed at different times thereafter does not prevent the contract from being continuous, or require liens to be filed within the specified time from the dates of furnishing the different parcels instead of from the time of furnishing the last item in the account.

When the person against whom a number of different mechanics' liens were filed conceded in the trial Court that some of them were valid, he is bound by that concession when the case is heard on appeal.

A notice, under Code, Art. 63, sec. 11, addressed to other persons in addition to the owner of the land, of the intention of a material man to claim a lien, is sufficient.

The same person furnished sand and lime for houses being erected and also plastered them, but under different contracts with the builder for the materials and for the work. The notice of his intention to claim a lien was not given to the owner within sixty days after furnishing the lime, etc., but was within that time after the work of plastering was done. *Held*, that his claim was valid as to the work done, but unenforceable as to the materials supplied.

Where the evidence is that the notice under Code, Art. 63, sec. 11, was given to the owner's wife, and there is no proof that he ever received it, such notice is insufficient,

Posting the notice on the building itself is not a valid substitute for personal service thereof under Code, Art. 63, sec. 12, unless it be shown that on account of absence or other causes personal service could not be had ; and a notice so posted must be addressed to the real owner.

When the materials, although used in the same building, were furnished under separate contracts, liens therefor must be filed within the specified time after furnishing the different parcels and not from the date of the last item.

Interest on lien claims are allowed from the time of filing the claims for record.

Appeal from decrees of the Circuit Court for Baltimore County (BURKE, J.)

The cause was argued before McSHERRY, C. J., BRISCOE, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*C. Dodd McFarland*, for the appellant.

*Alexander H. Robertson* (with whom was *J. Fred. Requardt* on the brief), for Myohl & Luken, appellees.

*John P. O'Ferrall*, for F. O. Singer & Co. *et al.*, appellees.

*Alfred D. Bernard* (with whom was *Richard Bernard* on the brief), for Nat. Mantel and Tile Co., appellee.

*Ferdinand C. Dugan*, for Jos. G. Johnson *et al.*, appellees, submitted the cause on brief.

PAGE, J., delivered the opinion of the Court.

The bill in this case was filed by the complainants for the enforcement of certain mechanics' liens held by them and others against Henry Hensel, the owner, and J. Edmund Eckstine, the builder, of five houses situate in Baltimore County. Hensel in his answer admits he is the owner of the houses, but denies that the complainants or the defendants claiming to be lienors, have any lien and that "whatever claim they may have had has been long since paid and settled." Eckstine in his answer admits he was the contractor and builder of the houses "at the time said goods was furnished as mentioned in the bill and says that all of said mechanics' lien claims as therein stated have been fully paid and satisfied." A very large amount of evidence appears in the record. We have gone through it with much care and patience. We cannot undertake now to present an analysis of it, but will content ourselves by announcing without argument or discussion the conclusions of fact that appear to us to be sustained by a preponderance of the proof. Much was said at the argument and upon the briefs, upon the alleged admission of Hensel and Eckstine in their respective answers and the effect upon the proof required to establish the allegations of the bill. But we do not refer more particularly to that for the reason that it seemed to be conceded by all parties that Hensel and Eckstine were respectively the owner and builder of the houses,

and after a proper consideration of all the testimony, that the materials and labor set forth in the respective liens were furnished and delivered as therein set forth. It therefore is proper for us to consider the several claims and determine as to their validity ; which we now proceed to do.

1st. As to the claim of Pearson & Co. The last item was delivered October 9th, 1899, the claim was filed 17th January, 1900, and the notice of intention to claim a lien was served on Hensel on the 6th of November, 1899. It is contended that there was no contract verbal or written under which the materials were furnished and that the claim is not effective as to materials delivered more than thirty days before the service of the notice. The proof shows that there was an understanding between Eckstine, and Pearson & Co., that the latter should furnish such hardware as would be needed in the construction of the houses, and it also appears that the several items of the account were furnished continuously and at short intervals as the materials were wanted at the building. Under these circumstances it must be presumed that they were furnished in accordance with the understanding originally existing between the parties, and it is therefore from the last item in the account that the notice, and the time within which to take the lien must date. *Trustees of the German Luth. Ch., &c., v. Heise & Co.,* 44 Md. 469.

The notice of the intention to claim a lien, is sufficiently explicit. It notifies in writing Henry C. Hensel, the owner, of the lienors' intention to claim the lien, and that is all that the law requires. Code, Art. 63, sec. 11.

It is true that the notice is addressed to other persons, as well as to Hensel, but it was also addressed to Hensel and served on him within the time limited by law. The lien claim states explicitly that Henry C. Hensel is the "owner or reputed owner," and this is sufficient. *Reindollar* v. *Flickinger*, 59 Md. 471. This lien must be sustained.

2nd. As to the claim of The Walbrook Coal & Supply Co. The last item was furnished on 24th August; lien claim was filed 25th November. Notice of intention served on Hensel

23rd October, within the sixty days required by the statute. The materials were furnished continuously, almost day by day, from July 18th until 24th August following. They were furnished in pursuance of an understanding made in the "early part of July," between the parties that the company should "furnish the material required of the kind shown in the bill to the five houses on Woodland Avenue, and the prices were fixed at different times thereafter." There was some evidence tending to contradict this, but we think the weight of proof sustains it. It is contended that because of the fact that the prices were fixed at different times that it cannot be considered that the materials were furnished under the same contract, and therefore the right to take the lien must date from the time of furnishing the different parcels and not from the last item in the account; and *Maryland Brick Co.* v. *Dunkerly*, 85 Md. 199, is cited to maintain that position. But in that case there was no understanding from the commencement, and the items objected to were for a different purpose than that for which the other items were supplied. Here the materials were furnished under the original understanding and for the same purpose, that is for use in constructing the houses. In *Boarman* v. *Clark*, 89 Md. 432, it was apparent that the work was done under "distinct contracts." In *Phillips on Mechanics Lien*, sec. 229, it is said: "When work or material is done or furnished, all going to the same general purpose, as the building of a house or any of its parts, though such work be done or ordered at different times, yet if the several parts form an entire whole, or are so connected together as to show that the parties had it in contemplation that the whole should form but one, and not distinct matters of settlement, the whole account must be treated as a unit, or as being but a single contract." So in a case where there was an agreement for furnishing material for use in constructing a building and during the period the plaintiff was furnishing material the contractor agreed with the plaintiff for certain specified materials to be furnished for the same purpose at an agreed price, it was held that the latter having been furnished for the same pur-

poses and during the time the other materials were being furnished, so far as concerned "the construction and application of the lien law, the furnishing of all the materials may properly be deemed to have been substantially continuing and undistinguishable, rather than as independent transactions." *State Door & Sash Co.* v. *Norwegian-Danish, &c.*, 45 Minn. 255. And to the same effect is *Miller* v. *Batchelder*, 117 Mass. 179; *Costello* v. *Dale*, 3 N. Y. Sup. Ct. 493, affirmed 1 Hun. 489. This case is not like that in *Boarman* v. *Clark*, 89 Md. 432, where there were two separate and distinct contracts; "the dwelling was erected under one contract and the outhouses under others." *Watts* v. *Whittington*, 48 Md. 356. *German Lutheran Church* v. *Heise & Co. (supra.)* This claim must be sustained.

3 and 4. As to the claims of John J. Duffy and Singer & Co. Of these the learned Court below says, "two of these lien claims, to-wit, the claims of Singer & Co. and John J. Duffy were conceded to be valid." The appellant having made this concession it cannot be now withdrawn. In *Fersner* v. *Bradley*, 87 Md. 490, where the Judge of the lower Court stated in his opinion which appeared in the record, that "no objection was made," &c., it was contended in this Court there had been a misapprehension on the part of that Court, but it was held here that if there was in fact, application should have been made to correct the alleged error, and this not having been done, the Court must be governed by the statement of the Judge as it appeared in his opinion. These claims must therefore be sustained.

5 and 6. As to the claim of James H. Warthen. The evidence of Mr. Warthen is that the understanding with Eckstine was to "plaster the houses." The houses were finished on the 7th day of September and the notice of intention was served on the 2nd of November. This claim is therefore a lien as to the plastering which also includes the pointing. The sand and lime seem to have been furnished in the latter part of August or first day of September more than sixty days before the notice was served, and inasmuch as it was furnished

under a separate and distinct agreement, it cannot be included in the lien. The claim must be held valid as to the charges for plastering and pointing but not as to the lime.

7. As to the claim of the Baltimore Cooperage Company. The notice of intention was sufficient in form and seems to have been served on Hensel within the period designated by the statute. This claim is sustained.

8. As to the claim of the National Mantel & Tile Co. We do not think the time of serving the notice of an intention to claim the lien on Hensel has been sufficiently shown. The statute demands that it shall be served within sixty days after furnishing the materials. Sec. 11, Art. 63, Code. The materials were delivered on the 19th day of Septemberr The notice was left with Mr. Hensel's wife on the 18th of November following. There is no proof that Hensel ever received this notice. It was attempted to supply this defect, by the evidence of Mr. Bernard. The substance of his testimony was that "Mr. Eckstine said that the serving of the notice was admitted, and Senator Lindsay" (counsel of Hensel) "said the only question was, whether we had furnished 'our material within sixty days of serving the notice.'" It is immaterial what Eckstine said; nothing he could say outside the presence of Hensel could bind the latter, and Hensel being the owner was the person on whom the notice had to be served. Nor does Mr. Lindsay, as his counsel, make any admission; on the contrary he states that the question as to the lien of The Tile Company was whether the notice had been served within the sixty days This is certainly no admission as to the time of service. It was shown that the notice was tacked on one of the houses. But there is no proof that "on account of absence or other causes" personal service could not have been made. This is necessary before the claimant can rely upon placing the notice on the building as the equivalent of a personal notice. This claim must therefore be rejected.

9th. As to the claim of Edward L. Kaufman & Co. The materials were furnished under one contract. The evidence is that in the early part of August, 1899, the firm agreed with

Eckstine to furnish all the paint, glass, varnishes, &c., for the five houses, and these materials were delivered beginning the 8th of August, continuously, from day to day until the 11th October. The notice of intention does not seem to have been served on the owner either by personal service or otherwise. There was a notice addressed to John H. Hensel placed on one of the houses, but whether Henry C. Hensel who was named in the claim as owner ever saw it or if he did knew that it was intended for him, noes not appear in the proof. There is abundant evidence in the record tending to show that by the exercise of reasonable diligence, Henry C. Hensel could have been found and personally served with the notice. But if it was in fact necessary to place the notice on the house, it should have been addressed to the person for whom it was intended. It was not so done. *Thomas* v. *Barber*, 10 Md. 380; *Kenly* v. *The Sisters of Charity*, 63 Md. 306; *Kelly* v. *Laws*, 109 Mass. 395; *Hays* v. *Tryon*, 2 Miles (Penn.) 203. This claim must be rejected.

10th. As to the claim of Myohl & Luken. The principal question here is, was the material furnished under one entire and continuous contract, or under separate and distinct contracts? There was much evidence respecting this, but it will only be necessary to refer now to the testimony of Mr. August Luken, a member of the firm. As he states the original contract, it was to furnish, not such lumber as might be needed for the construction of the houses but a specific quantity, contained on a list, a copy of which is in the record. The firm agreed to furnish the builder with those specified quantities for the sum of $1,487.45. Subsequently the builder purchased more lumber, not by virtue of the original agreement, but as he needed it. The lumber furnished in addition to the kinds and quantities included in that list was as much under a separate contract as was the lumber furnished by the firm to Eckstine for other work that the latter was then conducting. There was no testimony in the record that affects the nature of the transaction as we have stated it. It also appears from the evidence and from the account filed with the claim, that all the lumber mentioned in the list, had been delivered before

the 22nd of July. Of the delivery on the 2nd day of September, that being the last, Mr. Luken states that it was delivered, not by virtue of any understanding entered into before the beginning of the work, but because it "was ordered either that day or previous to that." So that this case is clearly within the rulings in *Trustees of the German Luth. Church* v. *Heise & Co.* (*supra*), where it was held that when the materials are furnished under separate distinct contracts, the right to take the lien must date from the time of furnishing the different parcels of material and not from the last item. And this rule will prevail "if the materials are furnished under distinct contracts, though to be used for the same purpose, or by the contractor in executing one and the same contract with the owner." *Watts* v. *Whittington*, 48 Md. 356. If it be conceded, as claimed by the claimants, that the notice of intention to claim the lien was legally served on Hensel, such service was not made certainly until the 31st day of October or the time when the notice bears date. No delivery prior therefore to September can be included in the lien. We should add however that we think there was no sufficient service on Hensel, for reasons that have already been applied to other claims in this proceeding, and need not now be repeated. This claim must be rejected.

The decree of the lower Court allows interest from the date of the last item in the accounts. In *Trustees of the German Lut. Church* v. *Heise & Co.* (*supra*), it was said "inasmuch as the lien, became a claim of record, enforceable without stay or condition, interest should be allowed from the time of filing the lien claim for record," and a failure to observe this rule entitles the appellants to a reversal of the decree in that respect. For these reasons the decree of the lower Court will be reversed, and the cause remanded for a new decree in conformity with the views herein expressed.

> *Decree reversed, the costs in this Court to be paid by the appellees, the costs below to abide the final decree, and the cause remanded for a new decree, in conformity to the views herein expressed.*

(Decided March 6th, 1092.)