841 A.2d 342

Benjamin GRAVETT, Individually and trading
as Ben Gravett Enterprises

v.

COVENANT LIFE CHURCH.

No. 1430, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Feb. 2, 2004.

James B. Larrimore (Serio & Higdon, P.A., on the brief), Lutherville, for appellant.

Kenneth K. Sorteberg (Huddles & Jones, P.C., on the brief), Columbia, for appellee.

Panel ADKINS, KRAUSER and GREENE,* JJ.

KRAUSER, J.

Appellant, Benjamin Gravett, individually and trading as Ben Gravett Enterprises, appeals from two orders of the Circuit Court for Montgomery County, one dismissing his petition to establish a mechanic's lien [1] on property owned by appellee, Covenant Life Church, and the other denying his subsequent "Motion to Reopen the Case to Permit Introduction of Additional Documentary Evidence."

Gravett is in the business of erecting steel structures for commercial businesses. In June 2001, Gravett contracted with Structural Steel Fabricators, LLC, to assist in the building of an addition to Covenant Life Church. Six months into this subcontract, Gravett sent Covenant Life a notice of his intention to claim a mechanic's lien, pursuant to Md.Code (1974, Repl.Vol.2003), § 9–104(b) of the Real Property Article ("RP"), asserting that Structural Steel had failed to pay for the work he had performed and the equipment and materials he had supplied in connection with the construction of the Church's addition. That notice was followed by another, which made essentially the same allegations but reduced the amount owed. Following those two notices, Gravett filed a petition to establish a mechanic's lien in the circuit court. The petition was dismissed, however, on the grounds that the notices sent by Gravett did not state when Gravett had

---

* Greene, J., now a member of the Court of Appeals, participated in the conference and decision of this case while a member of this Court; and participated in the adoption of this opinion as a member of this Court by special designation.

1. Appellant styled his petition "Complaint To Establish Mechanic's lien."

performed the work or supplied the materials and equipment for the addition, as required by RP § 9–104(b).

In response to the dismissal of his petition, Gravett filed a motion to reopen the case so that he could supply additional information. When that motion was denied, he noted this appeal, presenting the following issues for our review:

I. Did the trial judge abuse his discretion in denying Appellant's Motion to Reopen the Case, filed solely to admit certified mail receipts, when such additional evidence would have supplemented Appellant's Affidavit and Notice of Intent to Claim a Lien dated October 31, 2001, already admitted, and which directly addressed the question whether the Notice was actually received by the Appellee?

II. Was the Appellant's Notice of Intent to Claim a Lien dated December 27, 200[1],[2] together with Appellee's actual knowledge of prior notice dated October 31, 200[1], legally sufficient under Md. Real Prop.Code Ann., Section 9–104 to require that the Appellee's Motion to Dismiss be denied?

For the reasons that follow we shall affirm the judgment of the circuit court.

## Facts

Covenant Life Church contracted with Hitt Contracting, a general contractor, to build an addition to the church. Hitt then entered into a contract with subcontractor, Structural Steel Fabricators, LLC, to fabricate and erect structural steel, steel joists, and metal decking for that addition. Structural Steel then entered into a subcontract agreement with Gravett to erect the "structural steel" for the project.

On October 31, 2001, Gravett sent, by certified mail, a "Notice of Intention to Claim a Lien" to Covenant Life. That notice stated, in part:

---

**2.** Gravett erroneously stated the date as "2002."

The total amounts earned under the subcontractor's undertaking to the date hereof is *$354,327.57*, of which *$163,087.57* is due and unpaid as of the date hereof. The work done or materials provided under the subcontract were as follows: Provide steel for erection of structural steel, joists and deck; furnish and install studs; provide lifting unit with crane; contract extras per work orders.

About two months later, on December 27, 2001, Gravett sent another notice of intention to claim a lien to Covenant Life. That notice stated that "[t]he total amount earned under the subcontractor's undertaking to the date hereof is $359,530.57, of which $108,290.57 is due and unpaid as of the date hereof."

Having received no response to either letter, on February 26, 2002, Gravett filed a petition to establish a mechanic's lien, claiming that "[o]n December 27, 2001, [he] complied with the requirement of Section 9–104 of the Real Property Article by giving Notice upon [Covenant Life Church] of [his] Intention to File Mechanic's Lien." The petition stated that the "initial contract price was for $228,650.00," that he "performed 97 percent of the work contemplated thereby," and that he "ha[d] billed [Structural Steel] $221,790.50." It further stated that "written change orders approved by [Structural Steel] for additional work, labor and/or materials total $137,740.07" and that "[t]he total earned under [Gravett]'s subcontract with [Structural Steel] is $359,530.57, of which $108,290.57 is due and unpaid ... for services performed, materials and equipment furnished from July 19, 2001 through December 17, 2001." It concluded by requesting, among other things, an order establishing a lien against Covenant Life's property in the amount of $108,290.57.

On May 24, 2002, Covenant Life filed a motion to dismiss Gravett's petition, asserting that Gravett's notices [3] were defective because they did "not comply with § 9–104 of the Real Property Article." It pointed out that Gravett's notices did

---

[3]. While Covenant Life uses the term "notices," it is clear from the pleadings that the December 27, 2001 notice is the one upon which Gravett's petition to establish mechanic's lien is based.

not provide "the time when the work was done or the materials furnished" as required by § 9–104(b).[4]  About a month later, on July 1, 2002, Covenant Life filed a "Supplemental Motion To Dismiss," claiming that, in consideration of a $60,000 payment from Hitt Contracting on November 9, 2001, Gravett had "waived and released all claims, which may have existed as of November 9, 2001" against Hitt.  "$5,203.00 is the maximum lien amount which Gravett can possibly claim," Covenant Life stated, because only Gravett's "$4,573.00 invoice # 6456 dated December 19, 2001 and Gravett's $630.00 change order request dated December 10, 2001, came *after* the November 9, 2001 Waiver and Release was signed."

On July 3, 2002, the circuit court held a hearing on Covenant Life's motion to dismiss.  During argument, the circuit court admitted into evidence Gravett's sworn affidavit and the October notice.  The affidavit stated:

> On October 31, 2001, I mailed by certified mail and by first class mail, postage prepaid, a Notice of Intention to Claim a Lien to the Covenant Life Church, at 7501 Muncaster Mill Road, Gaithersburg, Maryland, ... stating an unpaid account due and owing for materials supplied and work performed at the Covenant Life Church ... in the amount of $163,087.57, and copies of which were mailed to each Hitt Contracting, Inc. and Structural Steel Fabricators, LLC.

After hearing argument, the circuit court found that the December 27, 2001 notice was defective and that Gravett was not entitled to a mechanic's lien.  The circuit court explained: "This notice was totally devoid of time, and so there is no basis in looking in the notice to determine when this work was done or materials furnished to see or ascertain from the notice that the property was lienable."

On July 5, 2002, the circuit court's July 3, 2002 order, dismissing Gravett's petition with prejudice, was entered into the record.  Several days later, on July 10, 2002, Gravett filed

---

4.  As we shall discuss later, subsection 9–104(b) provides a "form" of a notice of intention to claim a lien to be followed by a subcontractor seeking a mechanic's lien.

"Plaintiff's Motion To Reopen Case To Permit Admission Of Additional Documentary Evidence" pursuant to Maryland Rule 2–534. That motion requested that "the Judgment entered be reopened for the sole purpose of admitting into the evidence of this case the original certified mail receipts [for the notice dated October 31, 2001]." But before the circuit court could rule on his motion to reopen, Gravett, on August 2, 2002, filed a Notice of Appeal of the July 5th order to this Court. That appeal, however, was dismissed without prejudice, on Gravett's request. On August 20, 2002, the circuit court denied Gravett's motion to reopen the case. Gravett then noted this appeal.

## Standard of Review

"The proper standard for reviewing the grant of a motion to dismiss is whether the trial court was legally correct. In reviewing the grant of a motion to dismiss, we must determine whether the complaint, on its face, discloses a legally sufficient cause of action." *Fioretti v. Md. State Bd. of Dental Exam'rs,* 351 Md. 66, 71–72, 716 A.2d 258 (1998) (citations omitted). In reviewing the complaint, we must "presume the truth of all well-pleaded facts in the complaint, along with any reasonable inferences derived therefrom." *Id.* at 72, 716 A.2d 258; *see also Bennett Heating & Air Conditioning, Inc. v. Nations-Bank of Md.,* 342 Md. 169, 174, 674 A.2d 534 (1996); *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993); *Berman v. Karvounis,* 308 Md. 259, 264–65, 518 A.2d 726 (1987). "Dismissal is proper only if the facts and allegations, so viewed, would nevertheless fail to afford plaintiff relief if proven." *Faya,* 329 Md. at 443, 620 A.2d 327; *see also Bobo v. State,* 346 Md. 706, 709, 697 A.2d 1371 (1997).

## Discussion

Gravett contends that the "failure of the [December] notice . . . to include the time when the work was [done was] a harmless omission in a notice that substantially complied with the law." We disagree.

In *Himelfarb v. B & M Welding And Iron Works, Inc.,* 254 Md. 37, 253 A.2d 842 (1969), a case cited by both sides to this controversy, a subcontractor's notice of intention to claim a lien was defective, according to the Court of Appeals, because it failed to specify when the work had been done and the materials supplied, in violation of Md.Code (1957, 1968 Repl. Vol.), Art. 63 § 11(a), the predecessor to RP § 9–104(b). *Himelfarb,* 254 Md. at 42, 253 A.2d 842. Section 11(a), provided:

> (a) *Generally*—If the contract for furnishing such work or materials, or both, shall have been made with any architect or builder or any other person except the owner of the lot on which the building may be erected, or his agent, the person so doing work or furnishing materials, or both, shall not be entitled to a lien unless, within ninety days after furnishing the same, he or his agent shall give notice in writing to such owner or agent, if resident within the city or county, of his intention to claim such lien.

In holding that the notice was defective, the Court of Appeals explained that its decisions consistently read "into the notice called for by § 11 the requirements of § 19 respecting the structure of the claim." *Himelfarb,* 254 Md. at 41, 253 A.2d 842. As to those requirements, the Court stated:

> "It has always been held in Maryland that if the notice is given to the owner of the property before the lien claim is filed, it should definitely state the intention of the claimant to claim the lien, and also fully and specifically state the particulars of the claim and the nature and kind of work done or materials furnished, the time when done or furnished and the amount of the claim."

*Id.* (quoting *Welch v. Humphrey,* 200 Md. 410, 414, 90 A.2d 686 (1952)) (emphasis omitted). The court further explained that the notice requirement exists to protect the owner and that without a statement "that the work was done or the material supplied within 90 days, the owner has no way of determining whether the claim is lienable." *Id.* at 42, 253 A.2d 842.

The Court held that although the subcontractor's notice "stated that it was its intention to claim a lien" and "specified the nature or kind of the work or materials furnished, together with the amount or sum due," because "it omitted to particularize the time when the work was done or the materials furnished, the notice was fatally defective and, without a proper notice, there was no basis for the filing of a valid claim." *Id.* Like the notice in *Himelfarb*, Gravett's December notice is "fatally defective" because it does not provide the time when the work was done or the materials were furnished.

Gravett maintains, however, that because RP § 9–104 contains a "form of notice," which its predecessor did not, *Himelfarb* is not dispositive. We disagree. Subsection 9–104(a) of the Real Property Article provides that a subcontractor is "not entitled to a lien under this subtitle unless, within 120 days after doing the work or furnishing the materials, the subcontractor gives written notice of an intention to claim a lien substantially in the form specified in subsection(b) of this section."

Subsection 9–104(b), as Gravett correctly observes, does provide a form of notice. It reads as follows:

(b) *Form of notice.*—The form of notice is sufficient for the purposes of this subtitle if it contains the information required and is substantially in the following form:

"Notice to Owner or Owner's Agent
of Intention to Claim a Lien

. . . . . . . . . . . . . . . . . . . . . . . .

(Subcontractor)
did work or furnished material for or about the building generally designated or briefly described as

. . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . .

The total amount earned under the subcontractor's undertaking to the date hereof is $. . . . . . . . . . . of which $. . . . . . . . . . . is due and unpaid as of the date hereof. The work done or materials provided under the subcontract

were as follows: (insert brief description of the work done and materials furnished, the time when the work was done or the materials furnished, and the name of the person for whom the work was done or to whom the materials were furnished).

I do solemnly declare and affirm under the penalties of perjury that the contents of the foregoing notice are true to the best of the affiant's knowledge, information, and belief.

Gravett then cites *Tyson v. Masten Lumber & Supply, Inc.,* 44 Md.App. 293, 408 A.2d 1051 (1979), for the proposition that, to be valid, a notice need only be in substantial compliance with RP § 9–104(b), and he insists that his notice was. In *Tyson* this Court held that a notice, which was not "verified," was nonetheless in substantial compliance with the statute. *Id.* at 302, 408 A.2d 1051. We explained:

> While the verification is missing, the [owners] were not in any way misled or deceived. The fact is that they noted an answer on the same day they were served with the petition, thus indicating that they knew full well what the notice contained and were primed to mount their defense.... Actual knowledge may supplant formal statutory notification.

*Id.* But there is no suggestion in *Tyson* that a notice that fails to state when work was done or material supplied would be in substantial compliance with the statute. Indeed, that issue was not raised in *Tyson* (although there were grounds to do so) and thus, it was not before the *Tyson* court. *Id.* at 302 n. 15, 408 A.2d 1051.

Moreover, the *Tyson* Court's recognition of a substantial compliance standard does not advance Gravett's cause. That standard had already been adopted ten years earlier by the *Himelfarb* Court. *See Himelfarb,* 254 Md. at 40, 253 A.2d 842 ("[I]t is ... true that the lien, having been created by statute, is obtainable only if the requirements of the law are substantially complied with."). And, as noted, the *Himelfarb* Court had no trouble concluding that the omission of information regarding when work was done or materials supplied rendered

a notice fatally flawed. Thus, Gravett's December notice was not in substantial compliance with RP § 9–104(b).

Gravett next contends that "[t]he fact that the December Notice did not state when the work was performed was not fatally defective to the establishment of [his] mechanic's lien claim," because Covenant Life "had actual knowledge that [Gravett] had performed work within 120 days prior to that Notice," at the time it received Gravett's notice. That is because "60 days earlier, on October 31, 2001, [Gravett] sent to [Covenant Life] by certified mail a Notice ... in substantially the same form and with substantially the same information." Therefore, Gravett claims "[t]he December Notice, when coupled with [Covenant Life]'s actual knowledge only 60 days earlier of [Gravett]'s claim, was actual and sufficient notice to Covenant Life, and the Notice given was in substantial compliance with ... Section 9–104(b)." This argument is unpersuasive. Even if Covenant Life had actual knowledge of Gravett's prior claim because of the October 31, 2001 notice—which also did not state the time when the work was done—that does not mean that Covenant Life had actual knowledge of "the time when the work was done or the materials furnished" as required by RP § 9–104(b).

■ Finally, the circuit court did not abuse its discretion in denying Gravett's motion to reopen the case to admit the certified mail receipts of the October 31, 2001 notice. As Covenant Life correctly notes, confirmation of the time that that notice was received does not concern the key issue in this appeal: whether Gravett's December notice of intent to claim a lien, by not including the time when the work was done or materials were furnished, was in substantial compliance with RP § 9–104(b). It was not.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**